UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EDWARDS FAMILY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CLARK COUNTY, et al.,<br><br>　　　　　Defendants. | Case No. 2:12-cv-01530-MMD-PAL<br><br>ORDER |

　　　　This civil rights action filed by a Nevada state inmate comes before the Court on plaintiff Carl D. Edwards' two applications (dkt. nos. 2 & 3) to proceed *in forma pauperis* and his motion for appointment of counsel (dkt. no. 1), as well as on consideration of claims styled as being presented by the "Edwards Family."

**I.　　PAUPER APPLICATIONS**

　　　　The two pauper applications are both incomplete and deficient.

　　　　Although Edwards provided different "in care of" addresses with his initial filing, it is clear that he has been in custody at all times relevant to consideration of the procedural requirements for establishing pauper status under the Prisoner Litigation Reform Act (PLRA), including when he mailed the first pauper application for filing on or about July 31, 2012.

　　　　Edwards attached inmate store receipts from the Clark County Detention Center in a deficient effort to demonstrate that he did not have sufficient funds to pay the filing fee. Review of the online docket records of the Nevada Eighth Judicial District Court

further confirms that Edwards had been in custody continuously since at least on or about April 16, 2012, as well as during an interval prior to that. On April 30, 2012, Edwards pled guilty in No. C-11-274602 to the felony of battery with substantial bodily harm, and he was sentenced on October 15, 2012, to 24 to 60 months in state custody. Meanwhile, in C-12-282585, Edwards was arraigned on July 19, 2012, while in custody, on felony charges of aggravated stalking. Trial on those charges is currently set for January 8, 2013.

Further, Edwards referred within the body of a cover letter (dkt. no. 3-2) to his having been transferred to state custody at the High Desert State Prison ("High Desert").

It is thus clear that Edwards has been in custody at all times material to consideration of application of the requirements of the PLRA to his pauper applications.

Under these circumstances, both pauper applications are deficient. Both a fully executed financial certificate and an inmate account statement for the six months preceding the application are required by 28 U.S.C. § 1915(a)(2) and Local Rule LSR1-2.

On the first application, Edwards did not attach a financial certificate. Moreover, the inmate store receipts attached with the application do not constitute an inmate account statement for the preceding six months. Store receipts showing purchases and a running trust account balance do not constitute such an account statement, and such receipts do not provide all of the pertinent information reflected in an account statement.

On the second application, submitted at a time when he was at High Desert, Edwards attached a financial certificate with amounts written in some of the blanks, and with a date from several months before of July 14, 2012. The certificate was not executed by an appropriate institutional officer, of any institution, nor was the filing fee information filled in. Further, Edwards did not attach an inmate account statement, from any institution.

///

Both applications therefore will be denied without prejudice to the filing of a new and properly-completed application with all required – and current – financial attachments.

**II.     MOTION FOR APPOINTMENT OF COUNSEL**

Turning to the motion for appointment of counsel, there is no constitutional right to appointed counsel in a § 1983 action. *E.g., Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998)(*en banc*). The provision in 28 U.S.C. § 1915(e)(1), however, gives a district court the discretion to request that an attorney represent an indigent civil litigant. *See,e.g., Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). Yet the statute does not give the court the authority to compel an attorney to accept appointment, such that counsel remains free to decline the request. *See Mallard v. United States District Court*, 490 U.S. 296 (1989). While the decision to request counsel is a matter that lies within the discretion of the district court, the court may exercise this discretion to request counsel only under "exceptional circumstances." *E.g., Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the plaintiff's ability to articulate his claims *pro se* in light of the complexity of the legal issues involved. *Id.* Neither of these factors is determinative and both must be viewed together before reaching a decision. *Id.*

The Court does not find that exceptional circumstances warrant requesting a private attorney to voluntarily represent plaintiff in this matter. *Cf. Mallard, supra.*

Given that plaintiff Edwards ostensibly seeks to assert claims for other family members, the Court will discuss the claims presented in some depth to reflect why there is little likelihood of success on the merits of the claims presented. The Court's discussion is preliminary to a full and definitive screening of the pleadings, which does

///

not occur until an action properly has been commenced by either payment of the filing fee or grant of pauper status on a properly-completed pauper application.

The Court discusses Count II first, as the discussion of this claim provides context for discussion of the remaining claims.

In Count II, Edwards seeks the release of his son from juvenile custody. Edwards alleges that his son, K.E., has been held in juvenile custody beyond his eighteenth birthday on December 3, 2010. Even assuming *arguendo* that Edwards as a lay family member could pursue the legal rights of his now-major son in this type of proceeding, a federal civil rights action seeking the son's release would appear to be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, an inmate who seeks to bring a § 1983 claim that necessarily implies the unlawfulness of his custody first must establish that the confinement has been declared invalid by a state tribunal authorized to make such a determination, expunged by executive order, or called into question by the grant of a federal writ of habeas corpus. 512 U.S. at 486-87. Edwards refers to an alleged October 27, 2011, family court hearing in which a judge allegedly ordered that the county's jurisdiction be terminated upon K.E. being eighteen years old. However, the construction, application and/or enforcement of any such order would appear to be a matter to be addressed in the state courts through proper procedural avenues through to possible review by the Supreme Court of Nevada. It thus appears unlikely that Count II states a claim upon which relief may be granted at this time.

Turning then back to Count I, Edwards alleges that the defendants have discriminated against him by not allowing him to visit his son in juvenile custody. Edwards alleges that the defendants have discriminated against him in violation of, *inter alia*, the First Amendment, the Equal Protection Clause and the Americans with Disabilities Act (ADA). He asserts that he has been discriminated against "because of our beliefs in Equal Protection . . . and the right to raise our children as we choose" and "simply because he is a biker and a civil rights advocate." He maintains that he has not been allowed to visit with K.E. in the same fashion as his late wife was allowed to visit

4

1  him. He alleges that he has not been allowed to take K.E. out to eat lunch, to play
2  baseball, to see a movie, to take him to the mall to buy clothes, or to leave the property
3  at all allegedly like other parents are allowed to do. Edwards maintains that his son has
4  been moved to another location in order to prevent his being able to communicate with
5  him. Plaintiff refers to being able to show unlawful action by defendants on a motion for
6  summary judgment after discovery.

7  The majority of Count I fails on its face to state a claim upon which relief may be
8  granted. Bikers are not a suspect class subject to heightened protection under the
9  Equal Protection Clause. Conclusory allegations that one is being discriminated against
10  because he is a "civil rights advocate" or because of beliefs in equal protection and the
11  right to raise one's children do not state a claim. Nor are there any facts alleged in the
12  complaint that plausibly would state a claim for relief under the ADA. A plaintiff must do
13  more than present bare formulaic allegations raising only a possibility of unlawful
14  conduct.

15  In this same vein, a plaintiff may not rely upon the proposition that the supporting
16  facts will be developed during discovery and/or presented on a motion for summary
17  judgment or at trial. Rather, plaintiff must present allegations of actual fact in the
18  complaint itself to state a claim upon which relief may be granted.

19  The only possibly viable claim implicated in Count I, at least in theory, would be
20  based upon alleged unwarranted interference with the family relationship between
21  Edwards and his son in violation of substantive due process of law.

22  In conducting a preliminary assessment of the likelihood of success on the merits
23  of such a claim in connection with the counsel motion, however, the Court does not
24  ignore the following. For a substantial portion of the time period referenced in the
25  complaint, Edwards himself was in federal custody in another part of the country
26  following upon his conviction in this Court for being a felon in possession of a firearm.
27  He was on supervised release at one point, but he was remanded to custody following
28  violations of the conditions of his release and a preliminary detention finding that

1  Edwards represented both a danger to the community and a risk of flight.  He ultimately
2  was released from federal custody again on or around July 10, 2010.[1]  Moreover, as
3  discussed above, *supra*, Edwards thereafter has been in state custody nearly
4  continuously from in or around July 7, 2011, through the present.  He has been in state
5  custody on sundry felony charges, culminating in one case in a conviction for the felony
6  of battery with substantial bodily harm and with felony aggravated stalking charges
7  pending in another case as to which he currently is awaiting trial.  The only interval
8  during that time period in which he was not in state custody concluded with his arrest on
9  a bench warrant issued after he failed to appear for a court proceeding.

10  Accordingly, it would appear that Edwards has not been able to visit his son
11  during much of the period in question because he himself has been in federal or state
12  custody. For the intervals when he was not himself incarcerated, it is hardly
13  inconceivable that the defendants possibly might have a justifiable basis for placing
14  restrictions on the range of visitation rights authorized for a felon not only with multiple
15  felony convictions but who has been adding to the list of felony charges and convictions
16  during the time period in question, along with indicia that he presents a flight risk.  For
17  example, it is not implausible that the defendants might have a valid basis for not
18  allowing Edwards to take his son outside the facility "like other parents are allowed to
19  do," given his still-growing list of state and federal felony charges and convictions and
20  flight risk indicia.

21  Particularly given the bare and conclusory allegations of actual fact in Count I,
22  and subject to possible amendment if and after the action has been properly
23  commenced on a properly-completed pauper application, it further does not appear,
24  given the state and federal judicial records available to the Court, that there is a
25  likelihood of success on the claim.

---

[1] See No. 2:05-cr-00154-KJD-LRL, ## 136-154; #188, at 2; see also No. 2:10-cv-00973-RLH-GWF.

In Count III, plaintiff alleges a denial of equal protection and due process of law for alleged intentional infliction of emotional distress based upon the alleged unlawful incarceration of K.E., restriction of Edwards' visitation rights as to his son, the family having been forced out of a Henderson, Nevada home, all of the family's vehicles being impounded in 2010 and 2011, and Edwards allegedly having been harassed and falsely accused by the Henderson Police Department multiple times.

The claim based upon the alleged unlawful incarceration of K.E. does not appear to present a viable claim for the reasons discussed as to Count II, *supra*.

The claim based upon restriction on Edwards' visitation rights does not appear at this juncture to have a likelihood of success for the reasons discussed as to Count I, *supra*.

The claims concerning allegedly being forced from a home, vehicle impoundments and police harassment do not present viable claims against any of the defendants actually named in the complaint, who are defendants allegedly linked in one capacity or another to the juvenile detention and visitation situation. These claims, accordingly, do not present potentially viable claims against the named defendants even if the Court were to assume, *arguendo*, that the circumstances alleged otherwise would give rise to viable civil rights claims for intentional infliction of emotional distress, that other family members would have viable claims based upon the circumstances alleged, and that Edwards as a lay family member could assert such claims.

It thus appears at this juncture that there is little, if any, likelihood of success on the merits of the claims presented, subject to further screening review following payment of the filing fee or grant of pauper status on a proper application.

It further appears that Edwards is sufficiently capable of articulating the claims presented, which are not unduly complex.

Viewing both factors in conjunction, the Court does not find that exceptional circumstances warrant requesting a private attorney to voluntarily represent plaintiff in this matter.

The motion for appointment of counsel therefore will be denied.[2]

## III.   EDWARDS FAMILY CLAIMS

The "Edwards Family" is not a juridical entity that can sue or be sued. Suit by the "Edwards Family" does not present justiciable claims.

Moreover, the non-attorney Edwards may not pursue the matter *pro se* on behalf of other family members, whether individually or *in globo*. *See,e.g., Johns v. City of San Diego*, 114 F.3d 874, 876-77 (9th Cir. 1997). In this regard, the Court has reviewed the allegations of the complaint, and exceptional circumstances do not warrant requesting a private attorney to voluntarily act as counsel in this matter. The claims do not have a likelihood of success on the merits and instead would appear, subject only to further screening and possibly an opportunity for amendment as to Count II regarding Edwards himself, to constitute baseless claims.

The Court, accordingly, will dismiss all claims by the "Edwards Family" as a plaintiff without prejudice.

## IV.   REMAINING MATTERS

The Court by mere happenstance came upon a statement regarding a change of address embedded in a long cover letter. Under Local Rule LSR 2-2, plaintiff must provide the Court with immediate written notification of a change of address. Plaintiff must do so in a separate notice of change of address, not embedded in another filing. Further, it is plaintiff's responsibility to provide full and correct information, including his back number.

Plaintiff refers in the letter to the conform copy of his complaint being returned with "a generic – unofficial stamp, as filed, but with no clerk signature." Plaintiff then sent the complaint to a judge of this Court. He now has submitted a second pauper application and another complaint. What plaintiff received back the first time represents how *pro se* hard copy filings and conform copies are stamped by the Clerk upon filing of

---

[2] In reviewing the allegations of the pleadings, the Court does not imply by silence that the papers presented are not subject to additional deficiencies.

8

1  the original.  Plaintiff  should not continue to send further copies of the same filing to
2  judges of the Court and/or the Clerk.  Plaintiff should leave the clerical details of how to
3  file papers and return conformed copies to the Clerk's Office, which is following proper
4  procedure in this regard.  Further, this Court has a heavy docket, and the Court is not
5  always able to reach matters within sixty days of their filing.  If plaintiff receives back a
6  file-stamped copy like he received the first time, the matter has been filed, and it is
7  under submission pending the Court's being able to address filings in other longer-
8  pending cases and reach this particular matter.

9  Finally, juvenile proceedings are confidential, including after the juvenile allegedly
10  reaches majority.  Plaintiff shall refer herein to his son as "K.E." rather than by his name.

11  IT IS THEREFORE ORDERED that the applications to proceed *in forma*
12  *pauperis* (dkt. nos. 2 & 3) are DENIED without prejudice.  This action will be dismissed
13  without further advance notice unless plaintiff either pays the $350.00 filing fee or
14  submits a new and properly completed application within thirty (30) days of entry of this
15  order.

16  IT IS FURTHER ORDERED that the motion for appointment of counsel (dkt. no.
17  1) is DENIED.

18  IT IS FURTHER ORDERED that all claims asserted by the plaintiff "Edwards
19  Family" are DISMISSED without prejudice.

20  IT IS FURTHER ORDERED that the Clerk of Court shall change the address for
21  plaintiff Carl D. Edwards to the address and back number as stated in dkt. no. 3-2.  It is
22  the responsibility of the plaintiff to provide a full and complete address for inmate legal
23  correspondence in a separate written notice of change of address.

24  IT IS FURTHER ORDERED that the Clerk – after changing plaintiff Carl D.
25  Edwards' address on the docket as directed above – shall SEND plaintiff a copy of this
26  ///
27  ///
28  ///

order and two (2) copies of a blank application form to proceed *in forma pauperis* for incarcerated persons, together with the instructions for same.

DATED THIS 14th day of November 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE