1
2
3
4
5
6                        UNITED STATES DISTRICT COURT
7                             DISTRICT OF NEVADA
8                                    * * *
9  EDWARDS FAMILY,                        Case No. 2:12-cv-01530-MMD-PAL
10                           Plaintiff,                ORDER
11        v.
12  CLARK COUNTY, et al.,
13                          Defendants.
14

15        This civil rights action filed by a Nevada state inmate comes before the Court on

16  plaintiff Carl D. Edwards' two applications (dkt. nos. 2 & 3) to proceed *in forma pauperis*

17  and his motion  for appointment of counsel (dkt. no. 1), as well as on consideration of

18  claims styled as being presented by the "Edwards Family."

19  **I.    PAUPER APPLICATIONS**

20        The two pauper applications are both incomplete and deficient.

21        Although Edwards provided different "in care of" addresses with his initial filing, it

22  is clear that he has been in custody at all times relevant to consideration of the

23  procedural requirements for establishing pauper status under the Prisoner Litigation

24  Reform Act (PLRA), including when he mailed the first pauper application for filing on or

25  about July 31, 2012.

26        Edwards attached inmate store receipts from the Clark County Detention Center

27  in a deficient effort to demonstrate that he did not have sufficient funds to pay the filing

28  fee. Review of the online docket records of the Nevada Eighth Judicial District Court

further confirms that Edwards had been in custody continuously since at least on or about April 16, 2012, as well as during an interval prior to that.  On April 30, 2012, Edwards pled guilty in No. C-11-274602 to the felony of battery with substantial bodily harm, and he was sentenced on October 15, 2012, to 24 to 60 months in state custody. Meanwhile, in C-12-282585, Edwards was arraigned on July 19, 2012, while in custody, on felony charges of aggravated stalking.  Trial on those charges is currently set for January 8, 2013.

Further, Edwards referred within the body of a cover letter (dkt. no. 3-2) to his having been transferred to state custody at the High Desert State Prison ("High Desert").

It is thus clear that Edwards has been in custody at all times material to consideration of application of the requirements of the PLRA to his pauper applications.

Under these circumstances, both pauper applications are deficient.  Both a fully executed financial certificate and an inmate account statement for the six months preceding the application are required by 28 U.S.C. § 1915(a)(2) and Local Rule LSR1-2.

On the first application, Edwards did not attach a financial certificate.  Moreover, the inmate store receipts attached with the application do not constitute an inmate account statement for the preceding six months.  Store receipts showing purchases and a running trust account balance do not constitute such an account statement, and such receipts do not provide all of the pertinent information reflected in an account statement.

On the second application, submitted at a time when he was at High Desert, Edwards attached a financial certificate with amounts written in some of the blanks, and with a date from several months before of July 14, 2012.  The certificate was not executed by an appropriate institutional officer, of any institution, nor was the filing fee information filled in.  Further, Edwards did not attach an inmate account statement, from any institution.

///

1   Both applications therefore will be denied without prejudice to the filing of a new

2   and properly-completed application with all required – and current – financial

3   attachments.

4   **II.   MOTION FOR APPOINTMENT OF COUNSEL**

5   Turning to the motion for appointment of counsel, there is no constitutional right

6   to appointed counsel in a § 1983 action.  *E.g., Rand v. Rowland*, 113 F.3d 1520, 1525

7   (9th Cir. 1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir.

8   1998)(*en banc*).  The provision in 28 U.S.C. § 1915(e)(1), however, gives a district court

9   the discretion to request that an attorney represent an indigent civil litigant.  *See,e.g.,*

10  *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); 28 U.S.C. § 1915(e)(1)

11  ("The court may request an attorney to represent any person unable to afford

12  counsel.").  Yet the statute does not give the court the authority to compel an attorney to

13  accept appointment, such that counsel remains free to decline the request.  *See Mallard*

14  *v. United States District Court*, 490 U.S. 296 (1989).  While the decision to request

15  counsel is a matter that lies within the discretion of the district court, the court may

16  exercise this discretion to request counsel only under "exceptional circumstances."

17  *E.g., Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).  A finding of exceptional

18  circumstances requires an evaluation of both the likelihood of success on the merits and

19  the plaintiff's ability to articulate his claims *pro se* in light of the complexity of the legal

20  issues involved.  *Id.*  Neither of these factors is determinative and both must be viewed

21  together before reaching a decision.  *Id.*

22  The Court does not find that exceptional circumstances warrant requesting a

23  private attorney to voluntarily represent plaintiff in this matter.  *Cf. Mallard, supra.*

24  Given that plaintiff Edwards ostensibly seeks to assert claims for other family

25  members, the Court will discuss the claims presented in some depth to reflect why there

26  is little likelihood of success on the merits of the claims presented.  The Court's

27  discussion is preliminary to a full and definitive screening of the pleadings, which does

28  ///

1    not occur until an action properly has been commenced by either payment of the filing

2    fee or grant of pauper status on a properly-completed pauper application.

3         The Court discusses Count II first, as the discussion of this claim provides

4    context for discussion of the remaining claims.

5         In Count II, Edwards seeks the release of his son from juvenile custody.

6    Edwards alleges that his son, K.E., has been held in juvenile custody beyond his

7    eighteenth birthday on December 3, 2010.  Even assuming *arguendo* that Edwards as a

8    lay family member could pursue the legal rights of his now-major son in this type of

9    proceeding, a federal civil rights action seeking the son's release would appear to be

10   barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Under *Heck*, an inmate who seeks

11   to bring a § 1983 claim that necessarily implies the unlawfulness of his custody first

12   must establish that the confinement has been declared invalid by a state tribunal

13   authorized to make such a determination, expunged by executive order, or called into

14   question by the grant of a federal writ of habeas corpus.  512 U.S. at 486-87.  Edwards

15   refers to an alleged October 27, 2011, family court hearing in which a judge allegedly

16   ordered that the county's jurisdiction be terminated upon K.E. being eighteen years old.

17   However, the construction, application and/or enforcement of any such order would

18   appear to be a matter to be addressed in the state courts through proper procedural

19   avenues through to possible review by the Supreme Court of Nevada.  It thus appears

20   unlikely that Count II states a claim upon which relief may be granted at this time.

21        Turning then back to Count I, Edwards alleges that the defendants have

22   discriminated against him by not allowing him to visit his son in juvenile custody.

23   Edwards alleges that the defendants have discriminated against him in violation of, *inter*

24   *alia*, the First Amendment, the Equal Protection Clause and the Americans with

25   Disabilities Act (ADA).  He asserts that he has been discriminated against "because of

26   our beliefs in Equal Protection . . . and the right to raise our children as we choose" and

27   "simply because he is a biker and a civil rights advocate."  He maintains that he has not

28   been allowed to visit with K.E. in the same fashion as his late wife was allowed to visit

4

him.  He alleges that he has not been allowed to take K.E. out to eat lunch, to play baseball, to see a movie, to take him to the mall to buy clothes, or to leave the property at all allegedly like other parents are allowed to do.  Edwards maintains that his son has been moved to another location in order to prevent his being able to communicate with him.  Plaintiff refers to being able to show unlawful action by defendants on a motion for summary judgment after discovery.

The majority of Count I fails on its face to state a claim upon which relief may be granted.  Bikers are not a suspect class subject to heightened protection under the Equal Protection Clause.  Conclusory allegations that one is being discriminated against because he is a "civil rights advocate" or because of beliefs in equal protection and the right to raise one's children do not state a claim.  Nor are there any facts alleged in the complaint that plausibly would state a claim for relief under the ADA.  A plaintiff must do more than present bare formulaic allegations raising only a possibility of unlawful conduct.

In this same vein, a plaintiff may not rely upon the proposition that the supporting facts will be developed during discovery and/or presented on a motion for summary judgment or at trial.  Rather, plaintiff must present allegations of actual fact in the complaint itself to state a claim upon which relief may be granted.

The only possibly viable claim implicated in Count I, at least in theory, would be based upon alleged unwarranted interference with the family relationship between Edwards and his son in violation of substantive due process of law.

In conducting a preliminary assessment of the likelihood of success on the merits of such a claim in connection with the counsel motion, however, the Court does not ignore the following.  For a substantial portion of the time period referenced in the complaint, Edwards himself was in federal custody in another part of the country following upon his conviction in this Court for being a felon in possession of a firearm. He was on supervised release at one point, but he was remanded to custody following violations of the conditions of his release and a preliminary detention finding that

Edwards represented both a danger to the community and a risk of flight.  He ultimately was released from federal custody again on or around July 10, 2010.[1]  Moreover, as discussed above, *supra*, Edwards thereafter has been in state custody nearly continuously from in or around July 7, 2011, through the present.  He has been in state custody on sundry felony charges, culminating in one case in a conviction for the felony of battery with substantial bodily harm and with felony aggravated stalking charges pending in another case as to which he currently is awaiting trial.  The only interval during that time period in which he was not in state custody concluded with his arrest on a bench warrant issued after he failed to appear for a court proceeding.

Accordingly, it would appear that Edwards has not been able to visit his son during much of the period in question because he himself has been in federal or state custody.  For the intervals when he was not himself incarcerated, it is hardly inconceivable that the defendants possibly might have a justifiable basis for placing restrictions on the range of visitation rights authorized for a felon not only with multiple felony convictions but who has been adding to the list of felony charges and convictions during the time period in question, along with indicia that he presents a flight risk.  For example, it is not implausible that the defendants might have a valid basis for not allowing Edwards to take his son outside the facility "like other parents are allowed to do," given his still-growing list of state and federal felony charges and convictions and flight risk indicia.

Particularly given the bare and conclusory allegations of actual fact in Count I, and subject to possible amendment if and after the action has been properly commenced on a properly-completed pauper application, it further does not appear, given the state and federal judicial records available to the Court, that there is a likelihood of success on the claim.

---

[1]See No. 2:05-cr-00154-KJD-LRL, ## 136-154; #188, at 2; see also No. 2:10-cv-00973-RLH-GWF.

1       In Count III, plaintiff alleges a denial of equal protection and due process of law

2   for alleged intentional infliction of emotional distress based upon the alleged unlawful

3   incarceration of K.E., restriction of Edwards' visitation rights as to his son, the family

4   having been forced out of a Henderson, Nevada home, all of the family's vehicles being

5   impounded in 2010 and 2011, and Edwards allegedly having been harassed and falsely

6   accused by the Henderson Police Department multiple times.

7       The claim based upon the alleged unlawful incarceration of K.E. does not appear

8   to present a viable claim for the reasons discussed as to Count II, *supra*.

9       The claim based upon restriction on Edwards' visitation rights does not appear at

10   this juncture to have a likelihood of success for the reasons discussed as to Count I,

11   *supra*.

12       The claims concerning allegedly being forced from a home, vehicle

13   impoundments and police harassment do not present viable claims against any of the

14   defendants actually named in the complaint, who are  defendants allegedly linked in one

15   capacity or another to the juvenile detention and visitation situation.  These claims,

16   accordingly, do not present potentially viable claims against the named defendants even

17   if the Court were to assume, *arguendo*, that the circumstances alleged otherwise would

18   give rise to viable civil rights claims for intentional infliction of emotional distress, that

19   other family members would have viable claims based upon the circumstances alleged,

20   and that Edwards as a lay family member could assert such claims.

21       It thus appears at this juncture that there is little, if any, likelihood of success on

22   the merits of the claims presented, subject to further screening review following

23   payment of the filing fee or grant of pauper status on a proper application.

24       It further appears that Edwards is sufficiently capable of articulating the claims

25   presented, which are not unduly complex.

26       Viewing both factors in conjunction, the Court does not find that exceptional

27   circumstances warrant requesting a private attorney to voluntarily represent plaintiff in

28   this matter.

1    The motion for appointment of counsel therefore will be denied.[2]

2    **III.    EDWARDS FAMILY CLAIMS**

3    The "Edwards Family" is not a juridical entity that can sue or be sued.  Suit by the

4    "Edwards Family" does not present justiciable claims.

5    Moreover, the non-attorney Edwards may not pursue the matter *pro se* on behalf

6    of other family members, whether individually or *in globo*.  *See,e.g., Johns v. City of San*

7    *Diego*, 114 F.3d 874, 876-77 (9th Cir. 1997).  In this regard, the Court has reviewed the

8    allegations of the complaint, and exceptional circumstances do not warrant requesting a

9    private attorney to voluntarily act as counsel in this matter.  The claims do not have a

10   likelihood of success on the merits and instead would appear, subject only to further

11   screening and possibly an opportunity for amendment as to Count II regarding Edwards

12   himself, to constitute baseless claims.

13   The Court, accordingly, will dismiss all claims by the "Edwards Family" as a

14   plaintiff without prejudice.

15   **IV.    REMAINING MATTERS**

16   The Court by mere happenstance came upon a statement regarding a change of

17   address embedded in a long cover letter.  Under Local Rule LSR 2-2, plaintiff must

18   provide the Court with immediate written notification of a change of address.  Plaintiff

19   must do so in a separate notice of change of address, not embedded in another filing.

20   Further, it is plaintiff's responsibility to provide full and correct information, including his

21   back number.

22   Plaintiff refers in the letter to the conform copy of his complaint being returned

23   with "a generic – unofficial stamp, as filed, but with no clerk signature."  Plaintiff then

24   sent the complaint to a judge of this Court.  He now has submitted a second pauper

25   application and another complaint.  What plaintiff received back the first time represents

26   how *pro se* hard copy filings and conform copies are stamped by the Clerk upon filing of

27

28   ───────────────
     [2]In reviewing the allegations of the pleadings, the Court does not imply by silence
     that the papers presented are not subject to additional deficiencies.

8

the original.  Plaintiff  should not continue to send further copies of the same filing to judges of the Court and/or the Clerk.  Plaintiff should leave the clerical details of how to file papers and return conformed copies to the Clerk's Office, which is following proper procedure in this regard.  Further, this Court has a heavy docket, and the Court is not always able to reach matters within sixty days of their filing.  If plaintiff receives back a file-stamped copy like he received the first time, the matter has been filed, and it is under submission pending the Court's being able to address filings in other longer-pending cases and reach this particular matter.

Finally, juvenile proceedings are confidential, including after the juvenile allegedly reaches majority.  Plaintiff shall refer herein to his son as "K.E." rather than by his name.

IT IS THEREFORE ORDERED that the applications to proceed *in forma pauperis* (dkt. nos. 2 & 3) are DENIED without prejudice.  This action will be dismissed without further advance notice unless plaintiff either pays the $350.00 filing fee or submits a new and properly completed application within thirty (30) days of entry of this order.

IT IS FURTHER ORDERED that the motion for appointment of counsel (dkt. no. 1) is DENIED.

IT IS FURTHER ORDERED that all claims asserted by the plaintiff "Edwards Family" are DISMISSED without prejudice.

IT IS FURTHER ORDERED that the Clerk of Court shall change the address for plaintiff Carl D. Edwards to the address and back number as stated in dkt. no. 3-2.  It is the responsibility of the plaintiff to provide a full and complete address for inmate legal correspondence in a separate written notice of change of address.

IT IS FURTHER ORDERED that the Clerk – after changing plaintiff Carl D. Edwards' address on the docket as directed above – shall SEND plaintiff a copy of this

///

///

///

9

order and two (2) copies of a blank application form to proceed *in forma pauperis* for incarcerated persons, together with the instructions for same.

DATED THIS 14th day of November 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE